
# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-212

| | |
|---|---|
| TIFFANY DUCKERY | **Opinion Delivered** August 24, 2016 |
| APPELLANT | |
| | APPEAL FROM THE PULASKI |
| V. | COUNTY CIRCUIT COURT, |
| | ELEVENTH DIVISION |
| | [NO. 60JV-14-1608] |
| ARKANSAS DEPARTMENT OF | |
| HUMAN SERVICES | HONORABLE PATRICIA JAMES, |
| APPELLEE | JUDGE |
| | |
| | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Tiffany Duckery appeals from an order of the Pulaski County Circuit Court terminating her parental rights. On appeal, her sole contention is that the trial court erred in finding that the termination of her parental rights was in the children's best interest in light of the complete lack of credible evidence demonstrating the likelihood of adoptability. We affirm.

On December 8, 2014, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect of Y.D., S.M., and P.M. In the affidavit attached to the petition, DHS stated that a seventy-two-hour hold was placed over the children on December 3, 2014, due to neglect and parental unfitness. DHS had initially received a referral after P.M. and appellant had tested positive for cocaine at the time of P.M.'s birth. Appellant admitted that she had used marijuana a couple of days before giving birth but denied that she had used cocaine. Although appellant was allowed to take her

newborn home, the children were removed after DHS received a call from a nurse with Dr. Patricia Moss's office who stated that appellant was at the office with the two younger children and that appellant was delusional and homicidal. The trial court granted the petition on December 8, 2014, finding that probable cause existed for the removal. Subsequently, the trial court filed a probable-cause order on December 15, 2014, and the trial court ordered that appellant may have supervised visitation at DHS contingent upon negative drug screens.

An adjudication hearing was set for February 2, 2015. Appellant stipulated that the children were dependent-neglected, and the trial court, accepting the stipulation, found by a preponderance of the evidence that the children were dependent-neglected. At that time, the goal was set to be reunification. Additionally, appellant was ordered to follow all recommendations of the drug-and-alcohol assessment. On May 20, 2015, the trial court after a review hearing changed the goal to adoption, and a permanency-planning hearing/termination hearing was set for October 12, 2015.

DHS formally filed its petition for termination of parental rights on September 10, 2015. DHS alleged three separate grounds for termination under Arkansas Code Annotated § 9-27-341(b)(3)(B) (Repl. 2015): (1) that a parent has abandoned the juveniles; (2) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juveniles in the custody of the parent is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juveniles

2



in the custody of the parent; and (3) that a parent has subjected the juveniles to aggravated circumstances.

At the termination hearing, the family service worker assigned to the case, Jessica Warren, testified that the children were all doing well in their foster homes and that there were not any new medical or behavioral issues since the last court hearing. She explained that the children were removed after appellant and P.M. had tested positive for cocaine at P.M.'s birth. She recommended a goal of adoption because appellant failed to complete the services offered to her. After the children were removed, appellant admitted to Warren that she would test positive for cocaine on one occasion and, in fact, tested positive for PCP on several other occasions. Although a drug-and-alcohol assessment recommended that appellant complete inpatient drug treatment, Warren testified that appellant refused to do so because appellant did not think that it would help her. Finally, while she admitted that she was not an adoption specialist, she opined that the children were adoptable because they did not have any severe medical or behavioral disabilities and because families were more willing to adopt younger children.

Appellant testified on her own behalf. She admitted that she had used drugs during the pendency of this case. She additionally admitted that she did not complete all the services that were recommended, including inpatient drug treatment, because she only "did the [services] that [she] believe[d] in." She further testified that she did not attend visits with the children because she could not handle seeing her children and then not be able to take them home with her.

SLIP OPINION

The trial court filed an order terminating parental rights on December 17, 2015, finding that DHS had proved by clear and convincing evidence all three grounds for termination as alleged in the petition. The trial court additionally found by clear and convincing evidence that termination was in the children's best interest after taking into consideration the likelihood that they would be adopted and the potential harm if they were returned to appellant's custody. Regarding the children's adoptability, the trial court specifically stated that

> [t]he Department has an appropriate plan for permanent placement for the juveniles. The appropriate plan is adoption. While Ms. Warren said she was not sure if a matching list had been run, the Court finds her testimony about the adoptability of the children to be credible. She has been the family service worker on this case since the case first opened. The court believes Ms. Warren has the general casework experience, and experience regarding these three children specifically, to provide informed testimony about the adoptability of these children. The Court has taken adoptability into consideration in making its findings today.

This timely appeal followed.

A trial court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly



erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9–27–341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

Appellant does not contest the grounds for termination or that there was potential harm if the children were returned to her custody. Instead, appellant's sole contention is that the trial court erred in finding that the termination of her parental rights was in the children's best interest in light of the complete lack of credible evidence demonstrating the likelihood of adoptability. She argues that the caseworker's testimony that the children were adoptable was insufficient because she was not an adoption specialist and was unable to testify whether a matching list had been run by an adoption specialist to identify what adoptive placements were available for the children. However, while the likelihood of adoption must be considered by the trial court, that factor is not required to be established by clear and convincing evidence. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435

S.W.3d 495. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Id.*

Additionally, although appellant cites to *Grant v. Arkansas Department of Human Services*, 2010 Ark. App. 636, 378 S.W.3d 227, in support of her argument, the facts in *Grant* are distinguishable from the facts in this case. In *Grant*, the child in question was autistic, and the only evidence regarding his adoptability was from the adoption specialist who was of the opinion the child was adoptable because she believed that all children were adoptable. *Id.* Here, the caseworker did not make a blanket statement that all children were adoptable; instead, she concentrated on the children's specific circumstances and needs in giving her opinion that the children were adoptable. *See Caldwell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 144, 484 S.W.3d 719 (affirming a trial court's adoptability finding based on the caseworker's testimony that concentrated on the child's specific circumstances and needs in giving her opinion). The caseworker in this case specifically testified that there were no known medical or physical barriers to adoption, that the children's young ages made them even more adoptable, and that it was her opinion that these children were, in fact, adoptable. Given the high degree of deference we give to the trial court in weighing testimony, coupled with the caseworker's testimony, we cannot say that the trial court's finding was clearly erroneous. Thus, we affirm the trial court's decision.

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant.
*Andrew Firth*, Office of Chief Counsel, for appellee.
*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.