BRANDON J. HARRISON, Judge
Andrea Day appeals the termination of her parental rights to her three children. She argues that the circuit court erred in finding that termination was in the children's best interest because (1) the Arkansas Department of Human Services (DHS) presented insufficient evidence to support a finding of adoptability and (2) the Cherokee Nation expert witness expressed a preference that the children be placed together. We affirm.
On 1 November 2016, the Washington County Circuit Court ordered an emergency seventy-two-hour hold of ten-year-old *873 T.D., five-year-old D.D., and two-year-old A.D. after the children's school principal requested that a FINS (Family In Need of Services) case be opened. The children initially could not be located but were later found behind an EZ-Mart looking for food in a dumpster. On November 7, DHS petitioned for emergency custody of the children, and the attached affidavit noted five previous true findings against Day dating back to 2007 for inadequate supervision, newborn illegal-substance exposure, and inadequate food.
The circuit court ordered the children into emergency custody and later found probable cause to continue custody with DHS. The probable-cause order also directed DHS to notify the Cherokee Nation of the proceedings, as it was believed that the children were eligible for membership in the Cherokee Nation of Oklahoma. The Cherokee Nation Indian Child Welfare program confirmed that the children qualified as "Indian children," and Nicole Allison intervened in the case on behalf of the Cherokee Nation.
In December 2016, the circuit court adjudicated the children dependent-neglected due to neglect and parental unfitness. The goal of the case was reunification of the children with Day, and she was ordered to cooperate with DHS, participate in counseling, abstain from illegal drugs or alcohol, submit to random drug screens, and obtain and maintain stable housing and employment. The court also found that the Indian Child Welfare Act (ICWA) applied to the children and that there was good cause to deviate from ICWA's placement preferences "due to the children's special needs and behaviors and due to the current lack of ICWA-compliant placement options." AT that time, the court found that it was in the children's best interest to be placed separately.
In April 2017, the circuit court conducted a review hearing and found that Day had not complied with most of the court orders and the case plan and that she had made minimal progress toward mitigating the causes of the children's removal. The case was reviewed again in August 2017, and the court found that Day had not complied with any of the court orders or the case plan. In October 2017, the court entered a permanency-planning order that authorized a plan for adoption with DHS filing a petition for termination of parental rights. The order noted that Day was in total noncompliance and had not contacted DHS since the last hearing. The court found that Day had not shown stability or sobriety and had not availed herself of the services provided by either DHS or the Cherokee Nation.
In November 2017, DHS petitioned to terminate Day's parental rights. It alleged the statutory grounds of failure to remedy, failure to maintain meaningful contact, and aggravated circumstances. The circuit court convened a termination hearing on 1 February 2018.[1] Day did not attend the hearing. Nicole Allison, the Cherokee Nation child-welfare specialist, testified that Day had not taken advantage of services offered to her through the Cherokee Nation, such as transportation and housing assistance, drug treatment, counseling, and health care. Allison also said that DHS had provided active efforts to Day, but those efforts had failed. Allison opined that there was evidence beyond a reasonable doubt that continued custody with Day would likely result in serious emotional or physical *874 damage to the children. She explained that the Cherokee Nation had no objection to the fact that the children were not currently placed together but said, "The tribe would like to see the kids be placed together once they can."
Sarah Franklin, a therapist for therapeutic foster care (TFC), testified that she had been seeing D.D. since the fall of 2017. She said that D.D. had been diagnosed with ADHD and disruptive behavior disorder, NOS (not otherwise specified) and that he was on medication. She characterized his progress as "back and forth" but said that he had overall made progress and had decreased tantrums. She also noted that when T.D. was placed in the same home as D.D. for a short time, D.D. showed some regression. Franklin said that she would like to see D.D. transition out of TFC and either be adopted or be placed with a relative.
Whitney Muller, the DHS caseworker for all three children, testified that D.D. was currently in TFC, A.D. was in a local foster home, and T.D. was in residential treatment in Little Rock. Muller explained that A.D. was doing very well, that she was adoptable, and that her foster family was a potentially adoptive placement. Muller said D.D. had made progress in his TFC and that he was adoptable as well. As for T.D., Muller stated that he had been struggling lately and dealing with a lot of anger surrounding his mother's abandonment. She opined that "it will take the right family" but he was adoptable.
Muller said that Day had not been compliant at any point in the case and that she had last visited the children in April or May 2017. Day had also recently been arrested on charges of possession of methamphetamine, possession of controlled substance, and furnishing prohibited articles. Muller agreed that Day had not demonstrated an ability to keep the children safe from harm and said that the most important thing for the children was stability and permanency.
A.D.'s foster mom, identified only as Jody, testified that A.D. was placed with her in November 2016 and was doing very well. Jody said that A.D. was close with the entire family and that they were a potential adoptive home for A.D. Jody also explained that she facilitated communication between T.D. and A.D. about once a week and would like for them to spend more time together when T.D. is released from residential treatment. She also expressed interest in contact between A.D. and D.D. but said that there had been trouble scheduling visitation.
Pertinent to this appeal, in its oral ruling, the circuit court found that
although the placements that the three children are in are not ICWA-compliant placements, that there is good cause shown, the evidence shows today, that it's in their best interest that they remain in their particular placements[.] ... I find that it's in the best interest of these individual children that they be placed separately. We always try to keep children together, but every child is not the same, and what's best for one child might not be best for the other.
The court found all three children adoptable and said, "[W]e can look at adoption for the three together, but I don't think that's in their best interest." Specifically, the court found that it was in A.D.'s best interest to stay in her potential adoptive placement and for DHS to "explore and get matching lists for [T.D.] and [D.D.] to be adopted separately and also together, so we need to look at both of those options."
The circuit court's written order terminated Day's parental rights on grounds of failure to remedy, failure to maintain *875 meaningful contact, and aggravated circumstances. The court also found that termination was in the children's best interest, considering the potential harm to the health and safety of the children if returned to Day and the likelihood that the children will be adopted. As to adoption, the circuit court cited
the testimony of Whitney Muller, who stated that [A.D.], [T.D.], and [D.D.] have no special medical or behavioral needs that would prevent them from being adopted. Ms. Muller testified that [A.D.] is an adorable, smart little girl who is very bonded to her foster family. Further, the testimony of [A.D.]'s foster mother, Jodi [sic], is that she and her husband wish to adopt [A.D.]. Ms. Muller further testified that [D.D.] is an adorable little boy whose behaviors are drastically improving in his Therapeutic Foster Home. Finally, Ms. Muller testified that [T.D.] is a great kid, and although he is struggling lately with his behaviors, he is definitely adoptable.
Regarding ICWA compliance, the circuit court found the following:
The Court notes that the testimony of Nicole Allison, certified Indian Child Welfare Expert for the Cherokee Nation, is that the children's placements are not ICWA compliant, but that the Cherokee Nation does not have any objections to the children's placements. The Court notes that the Department and the Cherokee Nation have attempted to find ICWA compliant family placements for the children, but that no such placements have been found. The Court therefore finds beyond a reasonable doubt that it is in the best interests of the juveniles to remain placed separately at this time. Further, the testimony of Ms. Allison is that it is in the best interests of the children to remain placed separately and that the Cherokee Nation does not have any objection to the placement of the children at this time. Ms. Allison testified that it is in [A.D.]'s best interests to be adopted by her foster family, and the Court finds that the Department shall continue moving forward with the adoption of [A.D.] by her foster family. Ms. Allison further testified that it is in [D.D.]'s best interests to remain in his TFC home, as the Cherokee Nation does not have an ICWA compliant placement at the moment that can meet all of [D.D.]'s needs.
Day has now appealed this order.
On appeal, Day only challenges the circuit court's determination that termination of parental rights was in the children's best interest. A best-interest finding under the Arkansas Juvenile Code must include consideration of two factors, the first of which is the child's likelihood of adoption. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) (Supp. 2017). Adoptability is not a required finding, and likelihood of adoption does not have to be proved by clear and convincing evidence. Duckery v. Ark. Dep't of Human Servs. , 2016 Ark. App. 358. We have previously explained that the Juvenile Code does not require "any 'magic words' or a specific quantum of evidence" to support a finding as to likelihood of adoption. Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, at 8, 502 S.W.3d 569, 576. The law simply requires that the court consider adoptability and that if there is an adoptability finding, there must be evidence to support it. See Haynes v. Ark. Dep't of Human Servs. , 2010 Ark. App. 28 (reversing a best-interest determination because no evidence of adoptability was introduced, and the court failed to consider adoptability). A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding.
*876 Miller v. Ark. Dep't of Humans Servs. , 2016 Ark. App. 239, 492 S.W.3d 113.
Day first argues that despite Muller's testimony that all three children are adoptable, the only "substantial" evidence of the likelihood of adoption related to A.D., who resides in a potential adoptive placement. Day contends that Muller did not fully explain, nor did the circuit court consider, the depth of T.D.'s and D.D.'s behavioral issues, and due to this lack of consideration "and the black and white facts that the system is flooded with older children, it cannot be said that the evidence introduced in this case satisfied any reasonable quantum of proof as it related to the likelihood of adoptability for T.D. and D.D." Day also asserts that the circuit court misstated Muller's testimony in its order when it found that Muller testified that the children "have no special medical or behavioral needs that would prevent them from being adopted."
DHS responds that the record shows the circuit court fulfilled its statutory requirement by considering evidence on adoptability.[2] It argues that the existence of evidence that a child may have difficulties finding an adoptive placement, due to special needs or behavioral issues does not make a circuit court's adoptability finding clearly erroneous. DHS contends that Day is essentially asking this court to reweigh the evidence of adoptability, which we will not do.
As stated above, the law only requires that the court consider adoptability and that if there is an adoptability finding, that there be evidence to support it. Haynes, supra. Here, the circuit court clearly considered adoptability, and Muller testified that the children are adoptable. We agree that the circuit court may have misspoken when it said the children "have no special medical or behavioral needs that would prevent them from being adopted"; however, the circuit court followed that statement with an acknowledgment that D.D. was still in TFC and T.D. had behavioral issues. Thus, it cannot be said that the court did not take D.D.'s and T.D.'s specific circumstances into consideration.
Next, Day argues that the circuit court misconstrued Allison's testimony as to the children's best interest and failed to adhere to ICWA's provisions on preferred placement. The court found that Allison had testified that separate placements were in the children's best interest and that adoption by her foster family was in A.D.'s best interest. But, Day asserts, Allison never made those statements at the hearing. In addition, ICWA provides that "[i]n any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families." 25 U.S.C. § 1915(a). Day contends that the circuit court ignored this provision and erroneously "foreclose[d] any chance of reuniting these siblings and seeking a permanent placement where all three children could be placed together."
In response, DHS argues that Day failed to raise this argument below and is barred from raising it for the first time on appeal. See Lauman v. Ark. Dep't of Human Servs. , 2010 Ark. App. 564 (holding argument that DHS failed to comply with the notice requirements of ICWA was not preserved for review when it was not raised below). Alternatively, DHS asserts *877 that there is no merit to Day's argument because the circuit court addressed placing the children together and found good cause for the children to be placed separately. Further, the circuit court's order provided that DHS should continue to look for adoptive homes for T.D. and D.D. either together or separately, so reuniting the siblings was not foreclosed by the circuit court.
We agree that Day failed to make the "preferred placement" argument below, so it is not preserved for our review. If it were preserved, we would find the argument unpersuasive. The record demonstrates that DHS and the Cherokee Nation attempted to find ICWA-compliant family placements, including several possible relative placements, but none of those efforts were successful. Thus, the court specifically found good cause for the children to remain in their current placements.
As to the circuit court's recitation of Allison's testimony, while it does appear that the circuit court embellished Allison's testimony, we hold that this is not a reversible error. The court made its own independent best-interest finding and did not rely solely on Allison's testimony to make that finding. Any overstatement the circuit court made regarding Allison's testimony is not a basis to reverse the termination of Day's parental rights when the entire record is considered.
Affirmed.
Virden and Klappenbach, JJ., agree.

The termination hearing was a two-day hearing, with the second day occurring on March 8. However, Day's parental rights were adjudicated on February 1, and the March 8 hearing concerned the parental rights of Zchon Willis, D.D.'s putative father. Mr. Willis is not a party to this appeal.

DHS and the children's attorney ad litem filed a joint brief, but for simplicity's sake, we refer to appellee as "DHS."