Cite as 2026 Ark. App. 24

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-25-352

| | |
|---|---|
| EVAN DANIELLE WATSON<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILD<br>APPELLEES | Opinion Delivered January 14, 2026<br><br>APPEAL FROM THE HOT SPRING<br>COUNTY CIRCUIT COURT<br>[NO. 30JV-22-101]<br><br>HONORABLE STEPHEN L. SHIRRON,<br>JUDGE<br><br>AFFIRMED; MOTION TO<br>WITHDRAW GRANTED |

**KENNETH S. HIXSON, Judge**

Appellant Evan Danielle Watson appeals after the Hot Spring County Circuit Court filed an order terminating her parental rights to Minor Child (MC) (DOB 12-21-15).[1] Appellant's counsel has filed a no-merit brief and a motion to withdraw as counsel pursuant to Arkansas Supreme Court Rule 6-9(j) (2024) and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). The clerk of this court mailed certified copies of counsel's motion and brief to appellant's last known addresses informing her of her right to file pro se points for reversal; however, she has not done so. We grant counsel's motion to withdraw and affirm the order of termination.

---

[1]The circuit court also terminated the parental rights of MC's father, Aaron Jackson, Jr.; however, he is not a party to this appeal.

## I. *Relevant Facts*

On September 8, 2022, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect of MC. In the affidavit attached to the petition, a family-service worker explained that MC was removed from appellant's custody after appellant and David Collins were involved in an automobile accident that caused MC's infant brother to be ejected from the vehicle and killed. Although Mr. Collins had been driving, appellant admitted that both she and Mr. Collins had been drinking. MC, who was six years old at the time, was in the back seat of the vehicle and thankfully suffered only minor scrapes as a result of the accident. The family-service worker stated that MC was removed after the following safety assessment factors were identified:

- Safety factor #11: Caretaker's current substance use seriously affects his/her ability to supervise, protect or care for the child.

- Safety factor #12: Caretaker fails to protect children from serious physical injury or threatened harm.

The circuit court granted the petition for emergency custody on September 8, 2022, finding probable cause that MC was dependent-neglected and that it was contrary to MC's welfare to remain in appellant's custody. A probable-cause order was filed on September 30, 2022. The circuit court found that probable cause existed and continued to exist requiring MC to remain in the custody of DHS.

An adjudication order was subsequently filed on November 29, 2022. Appellant stipulated that MC was dependent-neglected "due to safety factors 11 and 12," and the circuit court found that the allegations in the petition and accompanying affidavit were

substantiated. The circuit court ordered that the goal of the case be reunification with a fit parent.

On January 10, 2023, the circuit court held a review hearing, and the circuit court returned MC to appellant's custody because appellant had been complying with the case plan and court orders. The circuit court ordered that the case-plan goal be to maintain MC in appellant's custody. The case progressed, and review hearings were held on April 4 and June 13, 2023, with the circuit court ordering that MC remain in appellant's custody. However, after a review hearing held on September 5, 2023, the circuit court noted that appellant had voluntarily placed MC with MC's aunt, Katy Petrus. The circuit court ordered that although MC was to remain in appellant's custody, appellant was not to remove MC from Ms. Petrus's physical custody. It further ordered that appellant was not allowed any unsupervised contact with MC because appellant had tested positive for amphetamine. The goal of the case was set as reunification with appellant.

Another review hearing was held on November 7, 2023, and the circuit court continued the goal of reunification. The court found that appellant had been complying with the case plan and court orders. The circuit court authorized appellant to have overnight visitation with MC. However, Ms. Petrus was permitted to terminate the visit if she saw anyone else at appellant's home or request that appellant take a drug screen if she did not think appellant was sober.

After the February 28, 2024, review hearing, MC was removed from appellant's custody and was temporarily placed in Ms. Petrus's custody. The circuit court noted that

3

appellant had relapsed and used an illegal substance. It further noted that appellant had not maintained contact with DHS, had not participated in outpatient substance-abuse treatment or AA/NA meetings, and had not maintained stable housing. The circuit court nevertheless continued the goal of reunification.

A first amended agreed permanency-planning order was filed on May 30, 2024. The circuit court stated that the "goal of the case shall be: Authorizing a plan to place custody of the juvenile with a parent, guardian, or custodian." It ordered MC to remain in Ms. Petrus's temporary custody and noted that appellant had been complying with the case plan and court orders since the last hearing.

After a hearing, a fifteen-months review order was filed on October 8, 2024. The circuit court changed the goal of the case to adoption following the termination of appellant's parental rights. The circuit court noted that appellant had not complied with the case plan or court orders, had not maintained contact with DHS since the last hearing, had not participated in outpatient substance-abuse treatment or AA/NA meetings, had not maintained stable housing, and had not attended visitation with MC.

DHS filed a first amended petition for termination of parental rights on October 28, 2024, alleging the following grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2023): failure to remedy; failure to provide significant material support or maintain meaningful contact; abandonment; a finding by the court that the juvenile or a sibling was dependent-neglected due to abuse that could endanger the life of the child and was perpetrated by the juvenile's parent, parents, or step-parent; other

4

subsequent factors; a parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life; that the parent had committed or aided in a felony battery that resulted in serious bodily injury to any juvenile; and aggravated circumstances. A termination hearing was held on February 26, 2025.

At the termination hearing, multiple documents, including DHS's court report, appellant's sentencing order, and the terms and conditions of appellant's probation, were admitted without objection. The circuit court further took judicial notice of the entire court record.

Appellant testified that she was currently residing at a substance-abuse rehabilitation facility until a bed was available with the Arkansas Division of Correction. She had pled guilty to endangering the welfare of a minor, which started this case, and was sentenced to serve a year in the community correction center plus five years' probation. Appellant admitted that she had been using methamphetamine during the pendency of the case. She further admitted that although she had previously started an outpatient program offered by DHS, she stopped attending the program when she began seeing a different therapist. She explained that she had not discussed her relapse with DHS because she did not "think that they care[d]." Appellant further explained that she had stopped visiting MC after she moved to Stuttgart and had not seen MC in about a year. She acknowledged that she had "really messed up over the past couple of years" and could not "make any excuses." However, she asked that MC be allowed to stay with Ms. Petrus until she was in a position to receive

custody of MC again. Appellant admitted that she did not know how long that would be but estimated that it would be about another year.

Kim Sowell, a DHS supervisor assigned to the case, testified about the case history as already outlined herein. She recommended that appellant's parental rights be terminated. She explained that MC had been thriving in his current placement with Ms. Petrus. Ms. Sowell stated that Ms. Petrus was interested in adopting MC.

Sandra Marfoglio-Hinton, an adoption specialist, testified that MC is highly adoptable even if Ms. Petrus did not want to adopt MC. She identified 192 possible adoptive families as a result of an "adoption data match."

The circuit court filed an order terminating appellants' parental rights on March 27, 2025. The circuit court made the following specific findings after outlining some of the relevant case history:

> 7. After considering the evidence, the Court finds that the evidence proves the following grounds and facts:
>
> A. Ark. Code Ann. §9-27-341(b)(3)(B)(i)*(a)* That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.
>
> . . . .
>
> C. Ark. Code Ann. § 9-27-34l(b)(3)(B)(ii)*(a)* The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.

D. Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)*(a)* The court has found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents or step-parent or step-parents.

. . . .

R. The safety concerns that prevent trial placement, return of custody, or other placement with the parent, Evan Danielle Watson, include that she has not demonstrated that she has stability and has not demonstrated that she has addressed her substance abuse.

. . . .

T. The parent, Evan Danielle Watson, has not complied with the case plan and the orders of the Court. She has not maintained contact with the Department. She completed inpatient substance abuse treatment but relapsed and used methamphetamine. She did not participate in outpatient substance abuse treatment or AA/NA meetings. She reentered inpatient substance abuse treatment in January of 2025.

U. In case 30CR-23-55, Evan Danielle Watson was convicted of Ark. Code Ann. 5-27-205 Endangering the Welfare of a Minor and Ark. Code Ann. 5-10-105(a)(1)(B)(i) Negligent Homicide. In her plea agreement, Evan Danielle Watson agreed to one (1) year in CCC plus five (5) years' supervised probation.

V. Evan Danielle Watson testified this date that at the time of the car accident, her husband was the driver of the vehicle and she was in the passenger seat. She testified that [MC] and her other child . . . were in the vehicle. She testified that she and her husband had been drinking. She testified that her other child . . . was killed in the accident.

. . . .

8. The Court also finds that the evidence proves the termination of parental rights is in the best interest of the juvenile. In making this finding, the circuit court considered all relevant factors, including the likelihood that the juvenile would be adopted if the parental rights were terminated, and the potential harm, specifically addressing the effect on the health and safety of the juvenile, that could be caused by returning the juvenile to the parents.

7

A. As to the juvenile's adoptability, the Court finds that the juvenile is adoptable based on the testimony of Sandra Marfoglio-Hinton and the temporary custodian desires to adopt the juvenile;

B. As to potential harm, the Court finds that the juvenile would be subjected to potential harm based on the Court's findings in paragraph 7 and the record of this case.

9. The Court, therefore, grants the Department's petition and terminates all parental rights between Evan Daniell Watson and Aaron Jackson, Jr. as to the juvenile, [MC], pursuant to section 9-27-341 of the Arkansas Code. Any prior orders directing the parents to pay on-going child support for the juvenile shall cease upon entry of this order. The Department is relieved of providing reunification services to the parents.

This appeal followed.

## II. *Standard of Review*

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

8

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

The intent behind the termination-of-parental rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

III. *Termination*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit brief and move to withdraw. Ark. Sup. Ct. R. 6-9(j)(1) (2024). The brief must include an argument section that lists all adverse rulings that the parent received at the circuit court level and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). The brief must also include a statement of the case and the facts containing all rulings adverse to the appellant, made by the circuit court at the hearing from which the order of appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). Appellant's counsel filed a no-merit brief.

Appellant's counsel explains that the only adverse ruling is the termination decision itself, and we agree. Appellant's counsel correctly asserts that there can be no meritorious challenge to the sufficiency of the evidence supporting the termination of appellant's parental rights. Although the circuit court found multiple statutory grounds for termination, only one ground is necessary to support the termination. *See Campbell v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 82. The circuit court found by clear and convincing evidence that DHS proved the failure-to-remedy ground, which provides that parental rights may be terminated when a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve months, and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*. Evidence that a parent begins to make improvement as

10

termination becomes more imminent will not outweigh other evidence demonstrating a failure to comply and to remedy the situation that caused the children to be removed in the first place. *Hodge v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 273, 646 S.W.3d 297.

We agree that sufficient evidence supports the circuit court's failure-to-remedy finding in this case. Here, according to the petition and accompanying affidavit, MC was removed from appellant's custody because her "current substance use seriously affect[ed] his/her ability to supervise, protect or care for the child," and she failed to "protect [her] children from serious physical injury or threatened harm." The circuit court adjudicated MC dependent-neglected and found that the allegations in the petition and accompanying affidavit were substantiated. Despite DHS's offer of services, appellant failed to remedy her substance-abuse issues by the time of the termination hearing and had only recently reentered an inpatient substance-abuse treatment facility until she could begin serving her sentence for her conviction for endangering the welfare of a minor. Appellant admitted that she had not even visited MC in the last year before the termination hearing. She further admitted that she had relapsed during the pendency of the case and had "really messed up over the past couple of years and . . . [could] not make any excuses." Although she desired to regain custody, she acknowledged that she would not be in a position to have custody of MC for about another year from the termination hearing. Considering these facts, the failure-to-remedy ground supported termination of appellant's parental rights, and any argument to the contrary would be without merit. Because we conclude that DHS adequately proved the failure-to-remedy ground, we need not discuss the remaining grounds

11

found by the circuit court. *See Kohlman v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595.

Appellant's counsel further asserts that there can be no meritorious challenge to the circuit court's finding that termination was in MC's best interest, and we agree. Ms. Sowell testified that Ms. Petrus was interested in adopting MC, and Ms. Marfoglio-Hinton testified that MC is highly adoptable. This court has made it clear that a caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Krecker v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 537, 530 S.W.3d 393. In assessing the potential-harm factor, the court is not required to find that actual harm would ensue if the child were returned to the parent nor to affirmatively identify a potential harm. *Sharks v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. The potential-harm analysis is to be conducted in broad terms. *Id.* Past actions of a parent over a meaningful period of time are good indicators of what the future may hold. *Id.* Here, the circuit court found that MC "would be subjected to potential harm based on the Court's findings in paragraph 7 and the record of this case." Certainly, evidence of a parent's continued drug use or failure to comply with court orders constitutes sufficient evidence of potential harm. *Long v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 372, 675 S.W.3d 158. Appellant's behavior over the course of the entire case as outlined above shows that the circuit court's finding that she posed a risk of potential harm to MC was not clearly erroneous. On this record, the circuit court's finding that termination of appellant's parental rights was in MC's best interest was not clearly erroneous, and we agree that any argument to the contrary would be without merit.

Thus, having carefully examined the record and the brief presented to us, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases, and we conclude that the appeal is wholly without merit. Accordingly, we affirm the order terminating appellant's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

WOOD and MURPHY, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.