2011 Ark. 187

**Alphonzo REID, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,
Appellee.**

**No. 10–696.**

Supreme Court of Arkansas.

April 28, 2011.

See also, 2009 WL 3855700 and 2010 WL 546436.

John Wesley Hall, Little Rock, for appellant.

Elisabeth McGee, Office of Chief Counsel, Little Rock, and Chrestman Group, PLLC, by: Keith L. Chrestman, for appellees.

COURTNEY HUDSON HENRY, Justice.

Appellant Alphonzo Reid appeals an order of the Miller County Circuit Court terminating his parental rights to his child, C.R., born on May 28, 1998. Other children involved in these proceedings include C.R.'s older siblings, A.R., born August 26, 1991, and A.R.J., born September 10, 1992.[1] Appellant is a long-standing member of the Tony Alamo Christian Ministry (TACM) in Fouke, Arkansas. Today, we also consider the appeals of four other TACM families. For reversal, appellant argues that the circuit court's grant of termination of his parental rights violated his constitutional guarantees of religious freedom; that the circuit court erred in ruling taped conversations between Tony Alamo and unidentified women as admissible; and that the evidence did not support the grounds for terminating his parental

---

1. Throughout most the proceedings, the whereabouts of the natural mother, Cynthia Yates, remained unknown. At appellant's termination of parental rights (TPR) hearing, the circuit court rescheduled a separate TPR hearing for the mother. This appeal does not concern her parental rights.

rights. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(a)(1) (2010), as this appeal presents an issue requiring the interpretation of the Arkansas Constitution. We affirm.

## I. *Facts*

A confidential source provided Arkansas law enforcement officials with information concerning child maltreatment occurring at the TACM compound. Arkansas State Police Crimes Against Children Division assisted the Federal Bureau of Investigation and the Arkansas State Police Criminal Investigation Division in their investigation of these allegations. On September 20, 2008, the Arkansas Department of Human Services (DHS) exercised a seventy-two-hour hold by removing six minor females, including A.R. and C.R., from immediate danger of severe maltreatment. On September 24, 2008, the circuit court entered an amended order for emergency custody that approved placement of A.R. and C.R. in DHS custody. The circuit court subsequently entered an order finding probable cause to believe that the juveniles were dependent-neglected and that emergency conditions existed that necessitated the removal of the juveniles from appellant's custody.

Following an adjudication hearing, the circuit court entered an order, finding that the juveniles were dependent-neglected as a matter of law; that appellant failed to protect his children against physical abuse; and that appellant was aware of the pattern and practice of severe physical beatings known within the closed community of TACM as "spankings" or "proverbs." The court also found that appellant failed to protect the children against the risk of improper sexual contact and sexual abuse by knowingly placing them in the residence of Tony Alamo, whom the court referred to as a known polygamist. The court ruled that appellant endorsed and facilitated illegal marriages of underage females, including his daughters, to adult males. The court noted that appellant was aware that Tony Alamo claimed to be married to multiple wives during 2006, 2007, and 2008, when A.R. and C.R. lived at TACM. The court further noted that appellant allowed these juveniles to live at TACM unsupervised by anyone other than Tony Alamo and his co-polygamists. The court found that appellant was neglectful in failing to provide reasonable medical care to A.R. and C.R. by failing to obtain or to maintain current immunizations as required by state law; by failing to reasonably assure that they received adequate educations; by failing to properly register the children in an accredited school with certified teachers or to properly register and provide home schooling; and by committing abuse by condoning and permitting involuntary fasts imposed upon children younger than fifteen years of age.

In its order, the court ruled that the children needed DHS services and ordered DHS to develop a case plan. The court ordered supervised visitation and school attendance. Appellant was ordered to submit to a psychological evaluation, attend counseling, complete parenting classes, obtain safe and stable housing separate and apart from TACM and its members, obtain stable employment separate and apart from the organization and its members, allow DHS access to his home for home visits, and comply with the case plan. The court ordered DHS to provide these services. Appellant appealed the circuit court's order adjudicating his daughters, A.R. and C.R., dependent-neglected, and the court of appeals affirmed. *See Reid v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 784, 2009 WL

3855700.[2] DHS filed a second dependency-neglect petition seeking emergency custody of other children, including A.R.J., who lived at TACM. On January 12, 2009, the circuit court held an adjudication hearing for these children who resided on the Alamo property, and the court found A.R.J. and the others dependent-neglected. The court of appeals affirmed the circuit court's ruling in *Reid v. Arkansas Department of Human Services,* 2010 Ark. App. 156, 2010 WL 546436.

The circuit court conducted a review hearing in April 2009 and subsequently entered an order, dated April 15, 2009, finding that the case plan met the needs of the children. The court found that DHS made reasonable efforts to provide services and that appellant had complied with the case plan by completing his psychological evaluation and parenting classes and by allowing DHS into his home. By September 2, 2009, the circuit court entered a permanency-planning order finding that the children remained in need of DHS services and that returning them to appellant's custody was contrary to the children's welfare. The court determined that it was in C.R.'s best interest to terminate parental rights with the goal of adoption. However, with regard to A.R. and A.R.J., the court found that it was not in their best interest to terminate parental rights but instead established a permanent goal of Another Planned Permanent Living Arrangement (APPLA).[3] The court found that appellant partially |₅complied with the case plan and court orders by obtaining a psychological evaluation and by completing parenting classes, but the court found that appellant had not followed the recommen-

dations of the psychological evaluation, had not obtained safe and stable housing, had not obtained employment separate and apart from TACM, and was not paying regular child support. The court ordered the children to attend school daily and ordered appellant to pay child support. The court also ordered DHS to work toward a permanency plan for C.R. and to provide independent living services to A.R. and A.R.J. The court also ordered continued supervised visitation.

DHS filed a petition for termination of parental rights with regard to C.R. on September 10, 2009. In its TPR petition, DHS alleged several grounds, including that C.R. had been out of the home for a period in excess of twelve months and that, despite meaningful efforts by DHS to rehabilitate the home and correct the conditions causing removal, those conditions had not been remedied by appellant.

On December 4, 2009, appellant filed a motion to eliminate two requirements from the case plan, claiming that the conditions were unconstitutional. Those two case plan requirements included (1) that appellant must abandon any housing supplied, paid for, or furnished by TACM and (2) that appellant must sever employment ties with TACM. In his motion, appellant claimed that these two case-plan requirements violated his First and Fourteenth Amendment rights, as well as rights guaranteed under article 2, section 24 of the |₆Arkansas Constitution. Citing *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), appellant argued in his brief that these case-plan requirements burdened his free exercise of religion be-

---

**2.** We note that the court of appeals referred to appellant as Alphonso Reid. However, our record indicates a different spelling, and we note the case name accordingly.

**3.** DHS may authorize a plan for APPLA that includes a permanent planned living arrangement, including independent living services and supervision, pursuant to Arkansas Code Annotated section 9–27–338(c)(6) (Repl.2009).

cause his time to spread TACM's evangelical message would be severely limited.

On January 27, 2010, the circuit court held a TPR hearing, which consisted of a global phase and a specific phase for each parent and their children. During the global phase, DHS presented, through the testimony of Salisa Templeton, a lieutenant employed at the Bowie County Correctional Center known as Bi–State, a compact disc that contained recordings of more than 250 conversations between Tony Alamo and various unidentified women during his time in jail. Appellant's counsel raised hearsay objections to these recordings, arguing that they were not the records of Bi–State but Global TelLink and that Alamo was not a party to the proceedings, and thus, the recordings could not be admitted as statements against interest. Counsel for appellant also argued that they were inadmissible as prejudicial under Arkansas Rule of Evidence 403. The circuit court ruled that the telephone recordings were business records and that their probative value outweighed any prejudice. During the global phase of the hearing, appellant also argued that the requirements of moving from TACM and seeking employment outside the ministry infringed upon his religious-freedom rights guaranteed by the First and Fourteenth Amendments and article 2, section 24 of the Arkansas Constitution. The circuit court denied the motion, finding that the State presented a compelling governmental interest to protect its children.

Also during the global phase of the TPR hearing, Ben Franks, a CASA volunteer, testified that, in federal prison, inmates were allowed phone calls, supervised visitation with children under the age of sixteen who were accompanied by an adult, and unlimited correspondence with family. Malynda Cree, the CASA program director in Texarkana, testified that the communal lifestyle of the children involved in the Alamo cases was unsafe based upon the occurrences of physical abuse, marriage of minors, and sexual abuse. Cindy Allen, a DCFS supervisor, testified that she worked with DCFS workers in appellant's case. She testified that she believed appellant could not go against Alamo's directions and that he had not taken the steps to remedy the reasons that caused removal. She stated that none of the parents had obtained safe and stable housing apart from TACM, and none of the parents had sought a reliable means of supporting their children apart from the ministry.

During the specific phase of the hearing, Miranda Raines, a DCFS family service worker in Saline County, testified that she supervised appellant's visits with his children. They included Tamela Reid, a majority-aged sibling who resided at TACM; A.R., who was eighteen years of age and chose not to attend some visits; A.R.J.; and C.R. Raines relayed that appellant interacted with the children, but she recalled a time when appellant and the children's therapist got into a heated argument, and appellant, in the presence of the children, slammed his hand against a door. On cross-examination, Raines admitted that C.R. appeared to love appellant but that appellant made the children uncomfortable when he yelled at their counselor.

Terry Yoya, a DHS employee in Hempstead County, testified that she had worked with the Reid family since November 2008 shortly after the children were placed in foster care. She testified that appellant did not attend three staffings on the case plan. She noted that appellant did undergo a psychiatric evaluation and appeared to have an overall functioning level in the low-average range. According to the psychiatric evaluation, appellant tended to parrot information, was easily

led by others, and appeared naive in his responses. Yoya testified that appellant completed his parenting classes and attended his initial appointment at a nearby counseling facility, but he did not attend any subsequent appointments. Yoya further stated that appellant did not obtain housing and that he declined the offer of a housing voucher. Yoya also testified that she discussed appellant's employment options and that he expressed an interest in becoming a truck driver, but ultimately, appellant did not seem agreeable to obtaining separate employment outside TACM. Yoya expressed her belief that appellant was not capable of protecting C.R. from harm. She stated that appellant never really parented his children because they had not ever lived with him. Yoya testified that the members of TACM were required to care for C.R. while appellant "traveled around to different jobs." Finally, Yoya testified that she believed it was in C.R.'s best interest to terminate appellant's parental rights. Yoya described C.R. as a mild-mannered, sweet, well-behaved child who likely would be placed for adoption.

Gayla Griffin, a DHS adoption specialist, testified that, while she had not met C.R., she was familiar with the adoption database, and she knew families who were willing to adopt children with C.R.'s profile. Griffin testified that C.R. would likely be adopted. Jackie Mundie, C.R.'s foster mother, testified that she enrolled C.R. in third grade in a local elementary school, and, despite finding the schoolwork challenging, C.R. received Bs and Cs and awards for good citizenship and perfect attendance. Sheila Keever, a CASA volunteer, testified that she recommended the termination of appellant's parental rights.

Toward the conclusion of the TPR hearing, appellant testified that he came to TACM in 1971 and had been employed by TACM since that time. Appellant described his work for the ministry as maintenance work. He testified that he performed various projects at different locations of TACM between 2004 and 2008. Appellant stated that he raised his children until his wife left in 2004. Appellant testified that he worked for the Alamo ministry in California when C.R. was taken into foster care and that C.R. lived with Tamela and A.R. at TACM during that time. During his testimony, appellant admitted to "whop[ping]" his children, but he denied sexually abusing them. Appellant testified that he took the children to the dentist and attended one staffing meeting, one counseling appointment, and most visitation. Appellant admitted that he had not gained employment outside of TACM and explained that the ministry already provided him housing, food, and clothing. Appellant testified that Yoya never offered him a housing voucher or referred him to an employment service. According to appellant, he did not require separate housing because TACM already provided for his needs. Appellant further testified that he had not sought housing outside of TACM because he believed it to be a safe environment for his children.

At the conclusion of the TPR hearing, the circuit court ruled specifically on appellant's motion on the two requirements of stable housing and employment and found that the State presented a compelling governmental interest in protecting its children. The court found that the case requirements burdened appellant's religion "to some degree" but did not reach the point that it overrode the compelling state interest. The circuit court found that, because of the State's compelling governmental interest, DHS "had the right to impose these requirements on the parents as part of its case plan."

On April 16, 2010, the circuit court entered its order terminating the parental rights of appellant to C.R. and granting DHS the power to consent to adoption. In the order, the circuit court found that DHS had proved by clear and convincing evidence that C.R. resided outside appellant's parental home in excess of twelve months, and despite a meaningful effort by DHS to rehabilitate the home, those conditions that caused removal had not been remedied. Specifically, the court found that services provided to appellant by DHS included a referral for a psychological evaluation, parenting classes, housing assistance, employment at the Work Force Center, and juvenile-counseling assistance. However, the court stated that appellant had refused counseling and had refused to seek housing and employment separate from TACM. The court also found that appellant willfully failed to provide significant material support for C.R. In addition, the court terminated on the ground that, subsequent to the filing of the original petition for dependency-neglect, other factors arose demonstrating that the return of the juvenile was contrary to her health, safety, and welfare, and despite DHS's offer of appropriate family services, appellant had manifested the incapacity or indifference to remedy those subsequent issues. After making a finding of adoptability and potential harm, the court ruled that termination of appellant's parental rights was in C.R.'s best interest. Appellant timely filed a notice of appeal.

## II. *Points on appeal*

### A. Free Exercise of Religion

For the first point on appeal, appellant argues that the termination of his parental rights violated his constitutional rights under the First and Fourteenth Amendments of the United States Constitution and article 2, section 24 of the Arkansas Constitution. Specifically, appellant urges this court to overrule *Thorne v. Arkansas Department of Human Services,* 2010 Ark. App. 443, 374 S.W.3d 912, because free-exercise-of-religion claims must be subjected to a strict-scrutiny analysis. Appellant claims this higher standard of scrutiny must be applied by this court in this case and that the court of appeals previously misapplied a balancing of interests of the children, parents, and the State. DHS responds that the heightened strict-scrutiny standard does not apply because the state action does not target religious activity.

Other appellant-parents from TACM have raised similar arguments to this court. In a separate opinion, we affirmed the circuit court's ruling on the parents' free-exercise-of-religion claims. *See Myers v. Ark. Dep't of Human Servs.,* 2011 Ark. 182, 380 S.W.3d 906. We affirm the circuit court's ruling involving C.R. for the same reasons expressed in the *Myers* opinion.

### B. Admissibility of Telephone Recordings

For the second point on appeal, appellant challenges the circuit court's ruling that admitted into evidence the taped conversations between Tony Alamo and unidentified women from TACM. Appellant argues that the circuit court erred in determining that the recordings were business records, pursuant to Rule 803(6) of the Arkansas Rules of Evidence, and that the taped recordings should have been excluded on hearsay grounds because Tony Alamo was not a party to the proceedings and the recordings could not be deemed as statements against his interest. Appellant contends that the recordings' probative value was substantially outweighed by undue prejudice. Appellant further asserts

that the admission of the taped recordings violated the Confrontation Clause. In response, DHS argues that the taped recordings were not hearsay and, as a result, the circuit court's ruling was not clearly erroneous.

Other appellant-parents from the Alamo ministry have raised similar arguments to this court. In a separate opinion, we affirmed the circuit court's ruling on the admissibility of the Alamo taped phone recordings. *See Myers v. Ark. Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906. We affirm the circuit court's ruling involving C.R. for the same reasons expressed in the *Myers* opinion.

### C. Termination of Appellant's Parental Rights

■ For the third point on appeal, appellant argues that the circuit court erred in terminating his parental rights. Specifically, appellant contends that DHS did not prove the grounds for terminating his parental rights by clear and convincing evidence.

■ The standard of review in cases involving the termination of parental rights is well established. When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the trial court's finding is clearly erroneous. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We give a high degree of deference to the trial court, as it is in a far superior position to observe parties before it and judge the credibility of the witnesses. *Id.* With our standard of review in mind, we should consider whether the circuit court's ruling was clearly erroneous.

■ Under Arkansas Code Annotated section 9–27–341(b) (Repl.2009), a circuit court may permanently terminate a parent's rights to his or her children if the court finds by clear and convincing evidence that (1) termination is in the best interest of the children, and (2) one ground for termination exists. When considering whether termination is in the best interest of the children, the circuit court should consider the following factors:

(i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

(ii) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent[.]

Ark.Code Ann. § 9–27–341(b)(3)(A). With regard to the potential-harm factor, we agree with the court of appeals's reasoning in *Lee v. Arkansas Department of Human Services,* 102 Ark.App. 337, 285 S.W.3d 277 (2008), that the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. Instead, the harm analysis should be conducted in broad terms. *See id.* We further cite with approval the court of appeals opinion, *McFarland v. Arkansas Department of Human Services,* 91 Ark.App. 323, 210 S.W.3d 143 (2005), that there is no requirement that the aforementioned factors in subsections (i) and (ii) be established by clear and convincing evidence. Rather, after consideration of all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *See id.*

As grounds for termination, Arkansas Code Annotated section 9–27–341(b)(3)(B)(i)*(a)* (Repl.2009) provides that the children remain out of the home for

over twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

With these TPR principles in mind, we turn to the present case. Here, DHS presented evidence that termination of appellant's parental rights was in C.R.'s best interest. First, Gayla Griffin, a DHS adoption specialist, testified that C.R. would likely be adopted with one of the families in the DHS adoption database. Additionally, DHS employee, Terry Yoya, testified that C.R. would likely be adopted. Second, potential harm included appellant's unwillingness to comply with the case plan by failing to find suitable housing outside TACM where young girls were repeatedly subjected to marriages while still minors, sexual abuse, involuntary fastings, and severe physical abuse. According to the global testimony presented at trial, Alamo continued to direct many details of the ministry, including the disbursement of food and punishment. Coupled with the potential harm of Alamo's pervasive control of TACM from federal prison, appellant continued to reside at TACM where Alamo members oversaw the daily activities of the ministry. According to a psychiatric evaluation, appellant maintained a low-average functioning and appeared to be easily led by others. Thus, appellant's failure to comply with the case plan, particularly the failure to find suitable housing apart from TACM where he could raise his daughter, displayed an inherent risk of subjecting C.R. to further potential harm at TACM. The circuit court's best-interest determination is not clearly erroneous.

Finally, as grounds for termination, the circuit court found that the children had been out of the home for over twelve

(12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. *See* Ark. Code Ann. § 9–27–341(b)(3)(B)(i)*(a)*. In this case, C.R. had been out of TACM for over twelve months. A joint exhibit stipulating numerous facts in the case included that the children, including C.R., had been out of the home for more than twelve months. Further, ample evidence showed that DHS made reasonable efforts to provide services, which included supervised visitation, psychiatric evaluation, counseling, and parenting classes. Appellant's case plan also directed appellant to obtain safe and stable housing, as well as stable employment separate and apart from TACM. Despite these numerous efforts, however, appellant did not comply with the case plan. Appellant did not attend all of his required counseling sessions and attended only one staffing meeting. More significantly, he admitted in his testimony that he failed to obtain housing and employment separate and apart from TACM. Therefore, this evidence fulfilled the statutory requirements for TPR on the first ground. Only one ground is necessary to terminate parental rights. *See Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001) (holding that the lower court's error in finding that the appellant willfully failed to provide support was harmless based on an alternate ground to support the termination of parental rights). Accordingly, based upon our standard of review, we hold that the circuit court properly terminated appellant's parental rights to C.R.

Affirmed.