Cite as 2019 Ark. App. 504

# ARKANSAS COURT OF APPEALS

DIVISION II
No.  CV-19-551

| | |
|---|---|
| | **Opinion Delivered:**  October 30, 2019 |
| AMBER WESTBROOK | APPEAL FROM THE SEBASTIAN |
| APPELLANT | COUNTY CIRCUIT COURT, |
| | FORT SMITH DISTRICT |
| V. | [NO. 66FJV-18-464] |
| | |
| | HONORABLE ANNIE HENDRICKS, |
| ARKANSAS DEPARTMENT OF | JUDGE |
| HUMAN SERVICES AND MINOR | |
| CHILD | AFFIRMED; MOTION TO |
| APPELLEES | WITHDRAW GRANTED |

### KENNETH S. HIXSON, Judge

Amber Westbrook appeals after the Sebastian County Circuit Court filed an order terminating her parental rights to T.W. (DOB 11-16-2018).  Appellant's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Arkansas Supreme Court Rule 6-9(i) (2019) and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004).  The clerk of this court mailed a certified copy of counsel's motion and brief to appellant's last-known address informing her of her right to file pro se points for reversal; however, she has not done so.  We grant counsel's motion to withdraw and affirm the order of termination.

## I.  *Facts*

On November 20, 2018, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect of T.W.  In the affidavit attached

to the petition, DHS explained that T.W. had been removed after he was born because appellant was incarcerated and the identity of T.W.'s father was unknown. The trial court granted the petition, finding that probable cause existed for the removal. The trial court noted that DHS had previously been involved with appellant concerning T.W.'s older sibling who had been removed. DHS had provided services to appellant in that case, including parenting classes, drug-and-alcohol assessment, drug screens, drug treatment, and other services. However, the trial court further noted that the services did not result in appellant's rehabilitation, as she continued to use illegal drugs and engage in unlawful behaviors, which resulted in her current incarceration. Subsequently, the trial court filed a probable-cause order.

An adjudication hearing was held on January 9, 2019, and the trial court found that T.W. was dependent-neglected on the basis of parental unfitness as defined in the Arkansas Juvenile Code. The goal of the case was set to reunification with the concurrent goal of adoption following termination of parental rights. The trial court noted that appellant's parental rights had been involuntarily terminated to T.W.'s older sibling because of appellant's lack of compliance and unwillingness or inability to rehabilitate herself or her circumstances, despite the meaningful services offered. Appellant was ordered to avail herself of any self-help classes offered while she was incarcerated and to keep DHS apprised of any significant life events, including being released from prison.

On January 24, 2019, DHS filed a petition for termination of parental rights. With respect to appellant, two grounds for termination under Arkansas Code Annotated section

9-27-341(b)(3)(B) (Supp. 2017) were alleged, including sentenced in a criminal proceeding for a substantial period and aggravated circumstances.

At the March 27, 2019 termination hearing, appellant testified that she had been convicted of possession of methamphetamine and possession of drug paraphernalia and was sentenced to serve two concurrent ten-year sentences in the Arkansas Department of Correction. She was sentenced on August 9, 2018, just shortly before T.W. was born. She admitted that she has a history of drug use since she was fifteen years old, including during her pregnancy with T.W.; she was twenty-nine years old at the time of the termination hearing. Appellant further admitted that she has previous convictions, some involving drugs, and that she had a pending charge for grand larceny in Oklahoma. Additionally, appellant acknowledged that her parental rights to another child, S.W., had been involuntarily terminated. S.W. was removed from her care due to her drug use and a bruise on his head. Although appellant explained that she had completed some parenting classes, she had not completed the parenting-without-violence class. She testified that her tentative release date was April 6, 2020, but she had a hearing before the parole board in October 2019, which she hoped would result in her early release in 2019. Therefore, appellant requested that the trial court grant her more time to obtain her release and give her the opportunity to parent T.W.

Bailey Murray, the family-service worker assigned to the case, testified regarding the case history as already outlined above, including that appellant was serving a ten-year sentence and still had nine years left on that sentence. She explained that T.W. had not had any visits with appellant since his birth and had not bonded with appellant. Murray testified

3

that T.W. is cute, sweet, and adoptable, despite having potential disabilities, acid reflux, and laryngomalacia. Because appellant had been incarcerated for a substantial amount of time and has a history of physical violence, Murray opined that it was not in T.W.'s best interest to be returned to appellant due to the risk of harm. She further opined that even if T.W. was not adoptable, the risk of harm outweighed the adoptability factor.

In the termination order, the trial court found by clear and convincing evidence that it was in the child's best interest to terminate appellant's parental rights. The trial court made the following pertinent findings:

> 5. The Court has considered and reviewed all the evidence submitted and the testimony of the witnesses, Amber Westbrook and Bailey Murray, in this matter, and finds that the Department of Human Services has proven by clear and convincing evidence that:
>
> a. That Amber Westbrook is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of [T.W.'s] life. (A.C.A. § 9-27-341(b)(3)(B)(viii)). Amber Westbrook is currently serving a total of two 120-month sentences, to be served concurrently, in the Arkansas Department of Correction, which is a total of ten (10) years. The mother was incarcerated on August 15, 2018, and at this time has not served even a year of her ten (10) year sentence. This juvenile has been out of his mother's care since he was born and will be ten (10) years old by the time the mother has completed her sentence. This would be a substantial period of this juvenile's life. This young child deserves permanency; and,
>
> b. Amber has subjected a juvenile to aggravated circumstances. The "aggravated circumstances" in this case includes that there is little likelihood that services to the mother will result in successful reunification within a timeframe that is reasonable, as viewed from the perspective of the juvenile, or that is consistent with the developmental needs of the juvenile.
>
> The mother has had her parental rights involuntarily terminated in case number JV2017-490. The juvenile in that case came into care when he was only a few weeks old and remained in care due to the mother's continued drug use and criminal behavior, which resulted in her being currently incarcerated. In that case, the Department offered the mother parenting classes, a drug and alcohol assessment, drug screens, drug treatment, and other

4

services.  The services offered by the Department did not result in the mother's rehabilitation, as she continued to use illegal drugs and engage in unlawful behaviors.  There are no services the Department could offer that would result in the successful reunification of the juvenile and the mother, within a timeframe that is reasonable from the perspective of the juvenile.  Amber Westbrook is currently serving a total of two 120-month sentences in the Arkansas Department of Corrections, which is a total of ten (10) years, due to her relationship with drugs and her unlawful behavior.  Amber's addiction and unlawful behavior has been ongoing since 2017, despite the Department offering reasonable services.  Amber's ten (10) years' sentence would constitute a substantial period of [T.W.'s] life.

6.      The Court finds by clear and convincing evidence that it is in the best interest of the juvenile to involuntarily terminate the parental rights of Amber Westbrook.  In making this finding, the Court specifically considered (a) the likelihood that the juvenile will be adopted, if the termination petition is granted; specifically, the testimony of the primary case worker, Bailey Murray, who stated that the juvenile is readily adoptable.  [T.W.] is a young and happy child with the characteristics of a child that any family would be happy to adopt.  The Department is readily able to identify adoptive families for the juvenile fitting the description of the subject juvenile.  However, regardless of adoptability, the Court finds that the risk of harm to the juvenile that would exist if he were to be returned to the parent, far out-weighs adoptability; and (B) the potential risk of harm on the health and safety of the juvenile caused by returning the juvenile to the custody of the parent is emotional, psychological, and physical.  The juvenile has never been in the mother's care since birth, due to her ten (10) year prison sentence.  The juvenile has no bond with Amber.  Amber has a history of drug use, including using while she was pregnant, and admitted on the stand that she used illegal substances, even after knowing she was pregnant.  Furthermore, the mother has a history of physical abuse that has never been addressed.  The mother's circumstances have not improved since the Court initially found that it was contrary to the welfare of the juvenile to be in the care of the mother, and that immediate removal of the juvenile from the care and/or custody of Amber Westbrook was necessary to protect the health, safety, and welfare of the juvenile from immediate danger.

7.      As such, the Court grants the Petition of the Department of Human Services and hereby involuntarily terminates all parental rights between Amber Westbrook and [T.W.]

This appeal followed.

## II. *Standard of Review*

A trial court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp 2017). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

6

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

### III. *Termination*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. Ark. Sup. Ct. R. 6-9(i)(1) (2019). The petition must include an argument section that lists all adverse rulings that the parent received at the trial court level and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(i)(1)(A). The petition must also include an abstract and addendum containing all rulings adverse to the appealing parent that were made during the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(i)(1)(B).

In counsel's no-merit brief, counsel correctly asserts that there can be no meritorious challenge to the sufficiency of the evidence to support the termination of appellant's parental

rights. Although the trial court found two statutory grounds for termination, only one ground is necessary to support the termination. *See Campbell v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 82. The trial court found by clear and convincing evidence that DHS proved the aggravated-circumstances ground. Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)* lists aggravated circumstances as a ground for removal:

> The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
>
> . . . .
>
> *(3)(A)* Have subjected any juvenile to aggravated circumstances.
>
> *(B)* "Aggravated circumstances" means:
>
> *(i)* A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification;

Here, evidence was presented that appellant had been incarcerated on two concurrent ten-year sentences since T.W.'s birth. Further, appellant admitted that she had a grand-larceny charge pending in Oklahoma at the time of the hearing. Moreover, despite having been offered services in a separate DHS case involving another child, appellant's parental rights to that child were terminated due, in part, to her continued drug use, including during her pregnancy with T.W., and her history of physical violence, which she refused to address or to receive treatment. *See Westbrook v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 352, 584 S.W.3d 258. Based on these facts, the aggravated-circumstances ground supported termination of appellant's parental rights to T.W., and any argument to the contrary would be without merit. Because we conclude that DHS adequately proved the aggravated-

8

circumstances ground, we need not discuss the remaining ground found by the trial court. *See Kohlman v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595.

Appellant's counsel further asserts that there can be no meritorious challenge to the trial court's finding that termination was in T.W.'s best interest, and we agree. The testimony showed that appellant has a history of drug abuse and violence resulting in the termination of her parental rights to another child. Additionally, she was incarcerated at the time of the hearing. Moreover, the caseworker testified that T.W. is adoptable. On this record, the trial court's finding that termination of appellant's parental rights was in T.W.'s best interest was not clearly erroneous. Thus, after carefully examining the record and the brief presented to us, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases, and we conclude that the appeal is wholly without merit. Accordingly, we affirm the order terminating appellant's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and VIRDEN, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

One brief only.