Cite as 2020 Ark. App. 170

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-19-773

| | |
|---|---|
| BROOKLYN HOLT<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **OPINION DELIVERED:** MARCH 11, 2020<br><br>APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT [NO. 36JV-18-14]<br><br>HONORABLE KEN D. COKER, JR., JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## ROBERT J. GLADWIN, Judge

In this no-merit appeal, Brooklyn Holt's parental rights to her child, TM, born February 11, 2018, were terminated in the Johnson County Circuit Court on July 1, 2019. Holt filed a timely notice of appeal on July 22, and her appellate counsel filed a motion to withdraw. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2019), counsel has filed a no-merit brief setting forth all adverse rulings from the termination hearing and asserting that there are no issues that would support a meritorious appeal. The clerk of this court sent a copy of the brief and motion to withdraw to Holt, informing her that she had the right to file pro se points for reversal under Rule 6-9(i)(3), which she has filed. We grant counsel's motion to withdraw and affirm the termination-of-parental-rights (TPR) order.

## I. *Facts*

On February 15, 2018, a few days after TM's birth, appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect with an attached affidavit that alleged Holt had tested positive for THC when TM was born and that TM's urine had tested positive for AMP and THC. Less than twenty-four hours later, Holt tested positive for amphetamine, methamphetamine, OxyContin, and THC.[1] DHS interviewed Holt, who stated that she planned to return to her trailer with TM and continue to live there with Tyler Marlow, TM's father.[2] She said that the trailer did not have running water. Holt claimed that Marlow had changed since his imprisonment for severe domestic violence toward her. Holt stated that she had lost custody of her daughter, KM, born July 1, 2015, due to severe domestic violence in the home.[3] She said that Marlow had broken both of her wrists, dislocated her shoulder, burned her with a soldering iron, punched her in the face, and kicked her all over her body. She said Marlow had thrown a hammer and hit her in the back of the head and attempted to throw a toaster in the bathtub in an attempt to kill her. Despite describing Marlow as "crazy," she felt it would be unfair to keep him away from his son, TM.

---

[1]The nursing staff stated that Holt was taking OxyContin for pain control after delivery.

[2]Marlow's parental rights to TM were also terminated in the July 1, 2019 order, but he is not included in this appeal.

[3] Holt's and Marlow's parental rights to KM were terminated by order filed January 25, 2017.

A probable-cause order was filed on February 26, and it was found that TM should remain in DHS custody. Holt was ordered to (1) submit to random drug screens; (2) attend parenting classes; (3) obtain and maintain stable housing and employment; and (4) submit to a psychological evaluation and a drug-and-alcohol assessment and follow any recommendations. Holt was granted supervised visitation contingent on drug screening.

TM was adjudicated dependent-neglected by order filed April 17. The goal of the case was reunification, and Holt's orders remained unchanged. Holt did not attend the review hearing held on June 5, and the court found that neither parent had complied with the court's orders or case plan. Holt's living situation was unknown, and she was ordered to complete inpatient/outpatient drug treatment.

A February 28, 2019 permanency-planning order states that Holt appeared at the hearing on January 15, and the circuit court changed the goal of the case to adoption with DHS to file a TPR petition. The court noted that Holt had made some progress and, although incarcerated at that point, appeared to be making a renewed effort toward working services available to her. However, she had not made significant and measurable progress under the case plan, and she did not appear poised to achieve reunification in a time frame consistent with TM's best interest, viewed from TM's perspective. Reunification services were ordered to continue.

DHS filed a TPR petition on March 20, and DHS alleged the following grounds against Holt: (1) "failure to remedy," Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2019); (2) "subsequent factors," Ark. Code Ann. § 9-27-341(b)(3)(B)(vii); and (3) "aggravated circumstances," Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)*. DHS

3

amended its petition to include as grounds against both parents that their parental rights had been involuntarily terminated as to TM's sibling, KM. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)*.

Holt did not appear at the June 18 termination hearing. DHS caseworker Ashley Elam testified that Holt was unemployed and had been throughout the case, had moved sporadically, and had been incarcerated during the case. Elam said that Holt never completed a psychological evaluation as ordered nor did she complete counseling as recommended; however, when Holt was incarcerated, she completed her GED, parenting classes, and outpatient drug treatment, and she was baptized. Elam testified that Holt was released from prison on May 7, 2019, and she tested positive for amphetamines and methamphetamine on June 13, 2019. Elam said that Holt did not attend visitation on a regular basis and that Holt does not have a bond with TM. Elam testified that TM would likely be adopted if parental rights were terminated and that his foster parents are interested in adopting him. Elam said that DHS supported termination and that it was in TM's best interest because his parents could not provide him a safe, stable environment.

Lyndon Reece, executive director of Proving Grounds, testified that Holt had been a client who attended classes on substance abuse. He said Holt was supposed to be inpatient for ninety days, but she got to her thirty-day mark and left after having worked the assigned job for one week. He said that she quit the program two weeks before the TPR hearing. Holt told Reece that she had gone back to Marlow and that she had relapsed.

Lisa McDaniel, a supervisor for the Division of Children and Family Services, testified that Holt disclosed to her the history of violence that she had with Marlow.

4

McDaniel said that despite this history, Holt felt like Marlow should be given the opportunity to see his son. McDaniel was concerned to learn that Holt was having contact with Marlow again.

Pursuant to the grounds alleged by DHS, the circuit court granted DHS's petition for TPR. Holt filed a notice of appeal, and her counsel filed a motion to withdraw and a no-merit brief.

## II. *Standard of Review*

We review termination-of-parental-rights cases de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543. We will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Holmes v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 495, 505 S.W.3d 730.

> In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

> The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id*. Finally, a parent's past behavior is often a good indicator of future behavior. *Id*.

*Westbrook v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 504, at 6–8.

### III. *TPR*

Pursuant to Rule 6-9, appellant's counsel may file a no-merit petition and move to withdraw in dependency-neglect cases if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. Ark. Sup. Ct. R. 6-9(i)(1). The argument section of the petition shall list all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(i)(1)(A). The abstract and addendum shall contain all rulings adverse to the appellant, made by the circuit court at the hearing from which the order of appeal arose. Ark. Sup. Ct. R. 6-9(i)(1)(B).

In counsel's no-merit brief, counsel correctly asserts that there can be no meritorious challenge to the sufficiency of the evidence to support the termination of Holt's parental rights. Although the circuit court found several statutory grounds for termination, only one ground is necessary to support TPR. *See Reid*, *supra*. It is indisputable that Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(4)*—aggravated circumstances due to a prior involuntary termination—was demonstrated. The prior involuntary termination of Holt's parental rights was a specific finding by the circuit court in the current case supporting TPR to TM, and the order of termination regarding TM's sibling was introduced as evidence.

Counsel also claims that termination was in TM's best interest. There was uncontroverted evidence that TM was likely to be adopted if parental rights were terminated—the caseworker testified that TM is adoptable and that the foster parents were

interested in adopting him. *Reed v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 416, 375 S.W.3d 709. Likewise, DHS produced evidence of potential harm. Holt's failure to complete the case plan and follow the court's orders, her continued drug use, her failure to appear at the final hearing, and her resumption of the relationship with her abusive boyfriend are good indicators of future behavior and demonstrate potential harm. *See, e.g.*, *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, 444 S.W.3d 366. Accordingly, the circuit court's finding that TPR was in TM's best interest was not clearly erroneous.

IV. *Pro Se Points for Reversal*

Holt filed pro se points for reversal generally arguing that she is entitled to have her son back. She claims that because she was incarcerated for nearly the entire time the case was pending, she was prevented from bonding with her child. She states that she has made mistakes but that no one is perfect. She claims that she thought she was doing what was best by trying to reconcile with TM's father, Marlow. She now sees that her history with Marlow alone was enough to prevent the courts from wanting to "give her a chance." She asserts that she deserves to have her son, that she no longer has any contact with Marlow, and that she has wanted only to be a mom her whole life. She does not blame the courts, but she states that DHS "threw it in her face" that it was too late to get her child back. She admits that she chose Marlow over KM but claims she will never do that again. She asserts that the abusive relationship with Marlow caused her to make mistakes and that she loves TM. Finally, she claims that she did not go to court "on the last day" because she was being held hostage. She asserts that she is going to a halfway house in Pine Bluff and is allowed to have her child there.

DHS argues that there is no merit to an appeal and rests on the no-merit brief.  We hold that Holt's argument is a request for this court to reweigh the evidence.  This court does not act as a super fact-finder or second-guess the circuit court's credibility determinations.  *Lynch v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 149.

After having carefully examined the record, the brief, and Holt's pro se points, we hold that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in TPR cases, and we conclude that the appeal is wholly without merit.  Accordingly, we affirm the order terminating Holt's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor child.