Cite as 2021 Ark. App. 101

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV-19-704

| | |
|---|---|
| | **Opinion Delivered:** March 3, 2021 |
| CHARLES MORGAN | APPEAL FROM THE POLK COUNTY CIRCUIT COURT [NO. 57JV-17-30] |
| APPELLANT | |
| V. | |
| | HONORABLE JERRY RYAN, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## PHILLIP T. WHITEAKER, Judge

Appellant, Charles Morgan, appeals a Polk County Circuit Court order terminating his parental rights to two children, C.M. and A.M.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2018), Morgan's counsel has filed a motion to be relieved as counsel and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of our court sent copies of the brief and the motion to withdraw to Morgan, informing

---

[1]This is the third time this case has been before us. In both *Morgan v. Arkansas Department of Human Services*, 2020 Ark. App. 128, and *Morgan v. Arkansas Department of Human Services*, 2020 Ark. App. 409, we ordered rebriefing after briefing deficiencies were noted. The case is now properly before us.

him of his right to file pro se points for reversal pursuant to Rule 6-9(i)(3); he has done so. Having examined the record, we grant counsel's motion and dismiss the appeal.

## I. *Factual and Procedural History*

Morgan is the father of C.M. and A.M. The Arkansas Department of Human Services (Department) has been involved with the Morgan household since October 2016 when the Department opened a protective-services case after allegations of physical abuse of A.M. by her paternal grandmother arose.[2] The Department provided numerous services to the family during the protective-services case.

In June 2017, Morgan was arrested for driving while intoxicated. At the time of his arrest, he was driving with both children in the car. The Polk County Sheriff's Office advised the Department of the arrest. The Department removed the children from the home determining that Morgan's alcohol usage negatively affected his caretaking and supervisory abilities and placed the children at risk of harm. The Department contacted the mother but was advised that she was unable to care for the children at that time. Due to the circumstances of Morgan's arrest, the mother's inability to care for the children, and no other relative placement,[3] the Department filed a petition for emergency custody and dependency-neglect with the court.

The court conducted an adjudication hearing on August 7, 2017, wherein Morgan stipulated to the adjudication of dependency-neglect. The court found the children

---

[2]The grandmother lived in the home with Morgan and the children at the time.

[3]After removal, the Department placed the children briefly with an aunt, but this placement was disrupted after the children called 911 claiming that their uncle had threatened them with a knife.

dependent-neglected due to Morgan's inadequate supervision but set the goal of the case as reunification with a concurrent plan of permanent guardianship, permanent relative placement, and adoption. Morgan was specifically ordered to follow all orders of the court and to complete the case plan.

After adjudication, the court conducted two review hearings, a permanency-planning hearing and a fifteen-month permanency-planning hearing. At the two review hearings, the court concluded that Morgan had made progress toward alleviating or mitigating the causes of the out-of-home placement. At the permanency-planning hearing, the court concluded that Morgan was making significant, measurable progress toward achieving reunification and granted Morgan an additional three months to achieve the stability necessary for reunification. After each of those hearings, the court noted and found that Morgan had complied with the case plan and the orders of the court.

At the fifteen-month permanency-planning hearing, the court acknowledged that Morgan had worked toward reunification since the children had been placed in the Department's custody and had shown a genuine, sustainable investment in completing the requirements of the case plan; however, even after being given an additional three months to establish stability, he had failed to do so, and the children could still not be placed with him. The court noted that Morgan had been sanctioned by the drug court for testing positive for methamphetamine and alcohol and had recently been arrested for DWI. As a result, the court determined that Morgan had only partially complied with the case plan and the orders of the court and had made only minimal progress toward the original case plan of

3

reunification. Therefore, the court changed the goal of the case plan to termination of parental rights and adoption.

In October 2018, the Department filed a petition for termination of Morgan's parental rights, alleging four grounds for termination: (1) twelve-month failure to remedy; (2) twelve-month failure to provide significant material support; (3) twelve-month failure to maintain meaningful contact; and (4) subsequent other factors. As to the best interest of the children, the Department alleged that the children are adoptable and that return to Morgan's custody could potentially harm the children due to his continued use of illegal substances; his lack of stability and sobriety; and his demonstrated indifference to the well-being of the children—factors indicating he would not appropriately care for the children.

The court conducted a termination hearing over the course of two days. The first day of hearing was held in January 2019. At that hearing, the court heard evidence that the children had been out of Morgan's custody for more than twelve months—since June 2017—and had been adjudicated dependent-neglected due to Morgan's neglect and inadequate supervision. During this period of time, Morgan had failed to provide any support in accordance with his means; had continued to use alcohol; had been arrested for DWI a second time; had tested positive for methamphetamine; and was incarcerated. Additionally, the court was informed that Morgan's housing was unstable throughout the proceedings and that he had just moved into a trailer the day before the hearing but that the trailer did not have electricity and was not yet furnished.

Concerning best interest, the court heard evidence that Morgan had a job, that he could support the children financially, and that he had visited with the children. However,

the children had chronic and destructive behavioral problems.[4] The Department expressed concern whether Morgan had the time or capacity to deal with their issues and adequately care for them. To support this concern, the Department offered evidence that, prior to removal, Morgan experienced difficulty maintaining income and employment because of the children's behavior at school, that he had removed C.M. from a residential treatment facility against medical advice, and that he also had problems with consistently giving C.M. his medication, which contributed to C.M.'s behavioral problems. Even though A.M. and C.M. exhibited behavioral problems, the Department presented evidence that the children are adoptable and that there were fifty-two families that would accept children with their characteristics.

At the close of the January 2019 hearing, the court found that the children had been outside the home for more than twelve months; that Morgan had not provided the children any material support during that time; that subsequent to the adjudication, he had tested positive for methamphetamine; and that he had not followed all the orders to participate in the services provided to him. However, the court noted that Morgan had made substantial attempts to comply with the programs offered by the department. While the court expressed reservations about Morgan's capacity and training to provide for the behavioral needs of the

---

[4]A.M. was placed in a therapeutic foster home. C.M. had a history of setting fires, physical aggression toward adults and children, destruction of property, and inappropriate sexual behavior.

children, the court delayed a decision on termination to give him an additional ninety days to prove that it would not be in the children's best interest to terminate his parental rights.

In April 2019, the court conducted the second day of the termination hearing. Morgan testified that he had been visiting regularly with the children and that he had a clean home with beds for the children. He stated that he was currently involved with drug court and in compliance with the requirements of that program, but he did admit that there were empty beer cans in his trailer when the social worker visited. While he testified that he had complied with all of the Department's requirements, he further admitted that he did not have adequate childcare for the children while he worked.[5] In response, the Department admitted that his trailer was clean and appropriate but continued to express concerns about stable housing and Morgan's inability to care for the children and their behavioral needs. The Department noted that C.M. engaged in extreme behaviors, such as threatening and abusive behavior as well as vandalism. Because of C.M.'s issues, the Department had recommended that Morgan take therapeutic foster-parent classes to learn how to deal with C.M., but his work schedule had prevented his participation.

After hearing the additional evidence, the court stated that it did not believe Morgan had the ability to address the needs of the children and that he had not adequately taken steps to address those needs. The court noted that having a place for the children to live and a job with adequate means to support them was not sufficient; that Morgan had had minimal contact with the children; that he had failed to provide significant support in accordance

---

[5]He stated that his sister would watch A.M., and he would take C.M. to work with him and homeschool him during the evening hours.

with his financial means; that he still had problems with alcohol; that he lacked the ability to properly supervise and protect the children from potentially dangerous harm while he is working; and that while Morgan had attempted to follow the case plan, he still had not remedied the problems preventing reunification. The court noted that its biggest concern was that Morgan had not shown the maturity or ability to make responsible decisions or to provide the structure and parenting skills needed to care for the children. This is highlighted by Morgan's plan to take C.M. to work with him and homeschool him at night.

An order terminating Morgan's parental rights was filed on June 20, 2019. The order recited the following statutory grounds for termination: (1) twelve-month failure to remedy—Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2019); (2) failure to provide significant material support—Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)*(a)*; (3) failure to maintain meaningful contact—Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)*(a)*; and (4) subsequent other factors—Ark. Code Ann. § 9-27-341(b)(3)(B)(vii). The order further stated that termination was in the best interest of the children; that the children are adoptable; and that the children would be subject to potential harm if returned to Morgan's care. Morgan appealed the termination.

## II. *Standard of Review*

We review termination-of-parental-rights cases de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543. We will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Holmes v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 495, 505 S.W.3d 730.

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The court must also find by clear and convincing evidence one or more of the grounds for termination listed in section 9-27-341(b)(3)(B) in order to terminate parental rights.

III. *Analysis*

Counsel has filed a no-merit brief asserting that the only adverse ruling is the termination itself and that there are no issues of arguable merit for reversal. We agree and conclude that there can be no meritorious challenge to the sufficiency of the evidence to support the termination of Morgan's parental rights. Although the circuit court found several statutory grounds for termination, only one ground is necessary to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918. Here, the trial court heard indisputable proof that Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)*—twelve-month failure to remedy—was demonstrated. The children were removed from the home in June 2017 due to inadequate supervision and remained outside the home for the twenty-two months. During that twenty-two months, Morgan was offered a variety of reunification services. Because Morgan had made some progress following the case plan, the court gave him additional time to remedy the conditions causing removal. Ultimately, he could not do so.

At the time of removal, Morgan had been arrested for driving under the influence resulting in his inadequate supervision. Throughout the proceeding, Morgan still had problems with alcohol and tested positive for methamphetamine. Perhaps more significantly, the children had significant behavioral issues requiring specialized treatment and supervision. The court found that Morgan did not appreciate the nature and severity of the children's issues as evidenced by his plan for supervising C.M. He testified that he intended to take C.M. to work and to homeschool him in the evenings. Clearly, Morgan did not appreciate the severity of C.M.'s behavioral issues and had not remedied the conditions causing removal.

Concerning the best interest of the children, counsel contends that there are no issues of arguable merit for reversal. We agree. The Department presented evidence that the children are adoptable. The adoption specialist testified the children are adoptable even with their behavioral issues and that there were fifty-two families that would accept children with their characteristics. *Reed v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 416, 375 S.W.3d 709. Likewise, the Department produced evidence of potential harm. During the pendency of the case, Morgan tested positive for methamphetamine, obtained another DWI, had empty beer cans in his residence despite his issues with alcohol, and had not demonstrated an ability to properly care for or supervise his children, who suffer from significant behavioral issues. Accordingly, the circuit court's finding that termination was in the best interest of the children was not clearly erroneous.

We now address Morgan's pro se points for reversal. Primarily, he focuses on the services he completed throughout the proceeding: several parenting classes; anger

management; MADD classes; and a drug assessment. He also points out that he started outpatient drug treatment through the drug court, had appropriate living arrangements, and that he is willing to attend therapeutic foster-parent training. All this information was provided to the trial court at the termination hearing. Morgan's arguments are basically a request for this court to reweigh the evidence. We do not act as a super factfinder or second-guess the circuit court's credibility determinations. *Lynch v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 149.

Having carefully examined the record, the brief, and Morgan's pro se points, we conclude that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination-of-parental-rights cases, and this appeal is wholly without merit. Accordingly, we affirm the order terminating Morgan's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

HARRISON, C.J., and MURPHY, J., agree.

*Thomas Wilson*, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.